```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA              :

     - v. -                           :    07 Cr. ___

IRA CHILOWITZ,                        :

                    Defendant.        :

- - - - - - - - - - - - - - - - - - - x
```

07 CRIM. 080

COUNT ONE

(Conspiracy)

The United States Attorney charges:

Background

1. At all times relevant to this Information, Morgan Stanley & Co. ("Morgan Stanley" or "Morgan"), was a company with offices in New York, New York. Among other services, through its Prime Brokerage Division ("Prime Brokerage"), Morgan Stanley provided financial and administrative services to numerous hedge funds. Morgan Stanley competes with other companies for hedge fund business in this area.

2. At various times relevant to this Information, IRA CHILOWITZ, the defendant, was employed as a consultant by Morgan in Morgan's Information Technology Department. In or about December 2000, Morgan assigned CHILOWITZ to Prime Brokerage where he was responsible for establishing secure computer connections between Morgan and hedge fund clients and third parties who were

1

authorized to receive that information by hedge fund clients. In addition, CHILOWITZ was assigned "help desk" duties to assist hedge fund clients in the event they were having difficulty accessing data on Morgan's computers which they were entitled to access.

3. In its computer databases, Morgan Stanley maintains numerous confidential and proprietary documents. These include a list of all of Morgan's Prime Brokerage hedge fund clients and the formulas used to calculate rates paid by these clients to Morgan for Prime Brokerage services. Morgan terms this the "Client Rates, All Clients List" (hereafter referred to as the "Client Rates List"). This list is updated by Morgan on a periodic basis. In printed format, the list is typically over 100 pages in length. The bottom of each page of the Client Rate List bears the notation "CONFIDENTIAL." Information in the Client Rate List would be highly valuable to competitors of Morgan. That is because the list sets forth the rates that Morgan charges to each hedge fund with regard to the client's debits, credits, short positions, etc., because each type of transaction typically has a separate negotiated rate.

4. Morgan Stanley maintains the Client Rates List and other confidential and proprietary business documents in electronic format in databases located on computer servers in Brooklyn, Manhattan, and New Jersey.

5. Because the Client Rates List is highly valuable and is not generally known to, or readily ascertainable through proper means by, members of the public, Morgan expends significant amounts of time, money, and effort to safeguard the Client Rates List. For example, the computer servers on which this data resides are separate servers from Morgan's other computer servers. In addition, Morgan routinely requires Prime Brokerage employees and consultants to undergo training regarding confidentiality aspects of Morgan's business. Furthermore, Morgan officials frequently send out mass emails to employees and consultants reminding them of best practices regarding the protection of confidential information belonging to Morgan and Morgan clients.

6. A company located in Midtown Manhattan (the "Midtown Company") is in the business of, among other things, negotiating on behalf of hedge funds the rates that hedge funds pay to Morgan (and competitors of Morgan) for prime brokerage services. The Midtown Company has earned revenue from its clients by negotiating lower fee rates than what the hedge fund clients would otherwise have been required to pay to companies such as Morgan for prime brokerage services. Accordingly, Morgan's rate data described above, if obtained by persons at the Midtown Company could enable the Midtown Company to earn revenue at the expense of Morgan.

7. From on or about September 15, 1997 to on or about

May 4, 2005, a co-conspirator not named herein ("CC-1") was employed as, among other things, a Prime Brokerage client service representative at Morgan Stanley. On or about May 4, 2005, CC-1 left Morgan Stanley and went to work for the Midtown Company.

## THE CONSPIRACY

8. From at least in or about December 2005, up to and including in or about February 2006, in the Southern District of New York and elsewhere, IRA CHILOWITZ, the defendant, CC-1, and others known and unknown (collectively, the "co-conspirators"), unlawfully, willfully, and knowingly combined, conspired, confederated and agreed together and with each other to violate the laws of the United States, to wit, to violate Title 18, United States Code, Sections 2314, 1832, and 1030.

## OBJECTS OF THE CONSPIRACY

### Interstate Transportation of Stolen Property

9. It was a part and object of this conspiracy that IRA CHILOWITZ, the defendant, together with his co-conspirators, unlawfully, willfully, and knowingly would and did transport, transmit, and transfer in interstate and foreign commerce goods, wares, and merchandise having a value in excess of $5,000, to wit, confidential and proprietary business documents belonging to Morgan Stanley & Co., Inc., knowing such goods, wares, and merchandise to have been stolen, converted, and taken by fraud, in violation of Title 18, United States Code, Section 2314.

### Theft of Trade Secrets

10.   It was a further part and object of said conspiracy that IRA CHILOWITZ, the defendant, together with his co-conspirators, unlawfully, willfully, and knowingly would and did steal, and without authorization appropriate, take, carry away, and conceal, and by fraud and artifice and deception obtain a trade secret that is related to and included in a product that is produced for and placed in interstate and foreign commerce with the intent to convert that trade secret to the economic benefit of someone other than the owner thereof, and intending and knowing that the offense would injure the owner of the trade secret, to wit, the defendant and his co-conspirators emailed confidential and proprietary business documents belonging to Morgan Stanley to persons outside Morgan Stanley not authorized to receive such documents, in violation of Title 18, United States Code, Section 1832(a)(1).

### Unautorized Computer Access

11.   It was a further part and object of said conspiracy that IRA CHILOWITZ, the defendant, together with his co-conspirators, unlawfully, knowingly, and intentionally, in conduct involving interstate and foreign communications, accessed protected computers without authorization and exceeded authorized access, and thereby obtained information from such protected computers, to wit, the defendant accessed computers owned and

5

maintained by Morgan Stanley in New York, New York; obtained confidential and proprietary business information relating to Morgan's Prime Brokerage business; and transmitted those docuemnts to email accounts in New York and Virginia, in violation of Title 18, United States Code, Section 1030(a)(2)(C).

### Means and Methods of the Conspiracy

12.   Among the means and methods used by IRA CHILOWITZ, the defendant, and his co-conspirators to achieve the objects of the conspiracy were the following:

a.   IRA CHILOWITZ, the defendant, routinely accessed databases of Morgan Stanley in order to obtain confidential and proprietary documents belonging to Morgan Stanley; and

b.   CHILOWITZ would and did transmit those confidential and proprietary documents as attachments to emails that he sent from his work email account at Morgan to his personal email account at America On Line.  In some cases, CHILOWITZ also sent confidential and proprietary Morgan Stanley business documents to a co-conspirator not named herein ("CC-1").

### Overt Acts

13.   In furtherance of said conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York:

a.   On or about December 21, 2005, CHILOWITZ sent

6

an email to CC-1 from Morgan's offices in New York, New York, containing an attachment that appeared to be a business proposal, noting that "[h]edge [f]unds pay millions annually to its [p]rime [b]rokers," and that "[w]ith our extensive list of contacts, lenders, and suppliers, we make sure that you will receive the best price and execution on the financing side." The proposal stressed that "we make sure the [p]rime brokers work twice as hard for half the revenue." CHILOWITZ noted in the email that he "made the adj[ustment] on the last page" of the business proposal and would review more tonight."

    b. On or about December 30, 2005, CC-1 sent an email to CHILOWITZ's AOL email address, which CHILOWITZ forwarded to his email account at Morgan, in New York, New York, in which CC-1 informed CHILOWITZ that he was "going to approach" certain "billionaire" managers of a hedge fund about working for them and in which he asked CHILOWITZ for certain confidential Prime Brokerage data. In addition, in that email CC-1 cautioned CHILOWITZ to "[b]e very careful."

    c. On or about February 8, 2006, at approximately 2:59 p.m., CHILOWITZ sent Morgan's Client Rate List from a computer at Morgan's offices in New York, New York, to his personal email account at AOL in Virginia.

    d. On or about various dates in January, 2006, CHILOWITZ sent emails from CHILOWITZ's email account at Morgan's

7

offices in New York, New York to CC-1 at CC-1's email account at the Midtown Company which attached various other confidential and proprietary financial hedge fund client data.

      e. In or about January 2006, CHILOWITZ and CC-1 met in a restaurant in New York, New York to discuss the formation of a consulting firm.

      (Title 18, United States Code, Section 371.)

## COUNT TWO

(Transportation of Stolen Property In Interstate Commerce)

      The United States Attorney further charges:

      14. The allegations of paragraphs 1 through 7, 12, and 13 of this Information are repeated and realleged as though fully set forth herein.

      15. From in or about December 2005, to in or about February 2006, in the Southern District of New York and elsewhere, IRA CHILOWITZ, the defendant, unlawfully, willfully, and knowingly would and did transport, transmit, and transfer in interstate and foreign commerce goods, wares, and merchandise having a value in excess of $5,000, to wit, confidential and proprietary business documents belonging to Morgan Stanley & Co., Inc., knowing such goods, wares, and merchandise to have been stolen, converted, and taken by fraud.

      (Title 18, United States Code, Sections 2314 and 2.)

COUNT THREE

(Theft of Trade Secrets)

The United States Attorney further charges:

16.  The allegations of paragraphs 1 through 7, 12, and 13 of this Information are repeated and realleged as though fully set forth herein.

17.  From on or about December 2005 to on or about February 2006, in the Southern District of New York and elsewhere, IRA CHILOWITZ, the defendant, unlawfully, willfully, and knowingly would and did steal, and without authorization appropriate, take, carry away, and conceal, and by fraud and artifice and deception obtain, a trade secret that is related to and included in a product that is produced for and placed in interstate and foreign commerce, with the intent to convert that trade secret to the economic benefit of someone other than the owner thereof, and intending and knowing that the offense would injure the owner of the trade secret, to wit, CHILOWITZ emailed confidential and proprietary business documents belonging to Morgan Stanley & Co., Inc., to a co-conspirator not named herein.

(Title 18, United States Code, Sections 1832(a)(1) and 2.)

COUNT FOUR

(Unauthorized Computer Access)

The United States Attorney further charges:

18.  The allegations of paragraphs 1 through 7, 12, and 13 of this Information are repeated and realleged as though fully

9

set forth herein.

19. In or about February 2006, in the Southern District of New York and elsewhere, IRA CHILOWITZ, the defendant, unlawfully, knowingly, and intentionally, in conduct involving interstate and foreign communications, accessed protected computers without authorization and exceeded authorized access, and thereby obtained information from such protected computers, to wit, Chilowitz accessed computers owned and maintained by Morgan Stanley & Co., Inc., in New York, New York; obtained confidential and proprietary business information relating to Morgan's Prime Brokerage business; and transmitted that business to his personal email account at America OnLine in Virginia.

(Title 18, United States Code, Sections 1030(a)(2)(C) and 2.)

_____
MICHAEL J. GARCIA
United States Attorney